UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 181 |
| v. | ) | |
| | ) | Magistrate Judge |
| HANDEL YOU | ) | Jeffrey Cole |

**MEMORANDUM OPINION AND ORDER**

**A.**

Mr. You was charged on February 26, 2008 with mail fraud, in violation of 18 U.S.C. § 1343, and with possession of counterfeit security of an organization, in violation of 18 U.S.C. § 513(a). Mr. You is a citizen of South Korea and a lawful permanent resident of the United States. At an extended bond hearing on July 9, 2008, a number of individuals testified about their dealings with Mr. You. It is those dealings that comprise the nucleus of operative fact underlying the indictment.

The testimony of those witnesses revealed that they and others were defrauded out of hundreds of thousands of dollars by Mr. You, who traded on their long time friendship and trust. Indeed, the scheme depended upon the creation and manipulation of those ties of intimacy. Mr. You's perfidy knew no bounds. He took the college fund of one of the victims and the inheritance of another. He retained $90,000 from another victim even after she lost her job and was desperate about her future. The testimony at the bond hearing revealed that within days of being confronted by two of his victims – thereby making discovery by other victims inevitable – Mr. You, his wife, and their children, left the United States for Korea. Mr. You transferred title to the family home to his sister. The house was immediately redecorated.

The unchallenged evidence presented at the bond hearing leads irresistibly to the firm conclusion that Mr. You had carefully planned to flee in the event of discovery and that his sudden departure in the wake of the exposure of his fraud was not an event unrelated to being confronted by two of his victims. Mr. You's rejoinder is that he left when he did to fulfill compulsory military service in Korea. Earlier, he made this claim under oath in a bankruptcy proceeding, but produced no evidence to support it even though there was ample time to have done so if the claim were true. Not only is there no credible proof to support this version of events, all the evidence is to the contrary. "The mind of justice, not merely its eyes, would have to be blind to attribute such an occurrence to mere fortuity." *Avery v. Georgia*, 345 U.S. 559, 564 (1953)(Frankfurter, J., concurring).

Apart from the circumstances described above, the following even is revealing: When the two victims who had first confronted Mr. You were unable to contact him by phone – he had terminated service both at his home and to his cellphone – they went to his home where there were greeted by his sister who told them that he and his family had only taken a brief vacation. Either Mr. You lied to his sister about where he was going or she lied for him to aid his escape. In either event, the evidence rather strongly supports the theory that Mr. You fled to avoid prosecution and further recriminations, not to satisfy some compulsory military obligation.

Upon his return from Korea, one would have thought that Mr. You would have returned to the Chicagoland area if indeed he had actually been fulfilling a compulsory military commitment. That did not occur. Instead, he took up residence in Connecticut, having severed all ties with his victims to whom he had claimed the strongest bonds of friendship. It is no answer to say that this is all circumstantial evidence. It surely is that, but as Judge Easterbrook once observed, "the

2

evidence was circumstantial. But oh what circumstances." *Branion v. Gramly*, 855 F.2d 1256 (7th Cir. 1988). *See also Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960)(Circumstantial evidence may be more certain, satisfying and persuasive than direct evidence).

When the Federal Bureau of Investigation ultimately located Mr. You in Connecticut and informed him of the outstanding arrest warrant, Mr. You stated that he would turn himself in to the FBI the next morning. He did not do so. Nor did he call the agents as he promised he would. Mr. You is facing charges in Connecticut for allegedly stealing $15,000 from his former employer which he allegedly stole in the days after learning of the arrest warrant in the instant matter. After being a fugitive for several weeks, Mr. You contacted the FBI and turned himself in – an event that he argued at the bond hearing demonstrates sufficient good faith that he can be trusted to be obedient to conditions of bond that would include his mother posting her residence with its $50,000 equity and home incarceration with electronic monitoring. These conditions, it is contended, would suffice to reasonably assure his attendance at trial notwithstanding potential incarceration and mandatory restitution in the amount of $900,000, to say nothing of the likelihood of deportation if convicted.

Of course, mail fraud schemes are common and more often than not the alleged perpetrator is placed on bond. Here, however, the circumstances of what occurred place Mr. You in a very different category, for they demonstrate that Mr. You is a serious flight risk and that that risk cannot be sufficiently minimized by any set of conditions.

**B.**

Under the Bail Reform Act, there is a preference for liberty that is consistent with our heritage and ensures that pretrial detention will occur only in rare circumstances. *Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996). As the Supreme Court has stressed, "[i]n our society liberty is the

norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, 18 U.S.C. § 3142(a) and (b) require that a person charged with an offense shall be released on personal recognizance or upon execution of an unsecured appearance bond unless further conditions are necessary to reasonably assure attendance at trial and the safety of the community. *United States v. Infelise*, 934 F.2d 103, 105 (7th Cir. 1991)(Posner, J.). *See also United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). Doubts regarding the propriety of release should be resolved in the defendant's favor. *United States v. Barnett*, 986 F.Supp. 385, 392 (W.D. La. 1997)(collecting cases).

Since decisions under the Bail Reform Act are discretionary, *Stack v. Boyle*, 342 U.S. 1, 6 (1951), there must be a consideration of the factors relevant to that exercise. *Id.* at 4. *Cf., United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007). The enumerated statutory factors that inform bond decisions are: the nature of the circumstances of the offence charged, the weight of the evidence, the history and characteristics of the person, including whether at the time of the current offense the person was on other release pending trial under federal, state or local law, the person's family ties, length of residence in the community, appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §1342(g)(1)-(4).[1]

A review of these factors leads to the conclusion that there are no set of conditions that will reasonably assure Mr. You's attendance at trial. Mr. You has virtually no ties to this community. He severed them when he fled in 2004. The nature and circumstances of the offense and the weight

---

[1] These factors have long a long history. *See Stack,*, 342 U.S. at 4. In the instant case, the government does not contend that Mr. You poses a danger to the community.

4

of the evidence also favor detention. Mr. You is charged with defrauding multiple individuals out of approximately $900,000, much of which has been traced by the government into Mr. You's accounts. The money was used for personal purposes. The offenses carry a total statutory maximum sentence of thirty years imprisonment. The evidence presented by the government and several of the victims was overwhelming and unimpeached. Finally, but perhaps most importantly, a likely conviction in this case could very well lead to deportation. In short, there is no incentive for Mr. You to stay and every incentive to flee.

Mr. You has no funds to post for bond. Indeed, he is being represented by the Federal Defenders office. The only tangible security that could be posted is the $50,000 equity in his mother's home. While perhaps in other contexts with other defendants this would be more than sufficient, given the melancholy circumstances of this case, here it is not. First, there is absolutely no evidence of Mr You's relationship with his mother from which sufficient fidelity could be inferred that would make flight unlikely. And even if there were evidence of a close relationship between the two, it would not be enough to be able to predict with reasonable assurance that it would exert sufficient gravitational force to prevent Mr. You from fleeing.

The proof at the detention hearing was that Mr. You defrauded those with whom he had long standing and intimate relationships. Indeed, the scheme could not have functioned without those relationships and the trust and confidence the victims had in Mr. You. Consequently, on the state of the present record, it simply cannot be said with any degree of reasonable assurance that Mr. You would have any more regard for the relationship with his mother than he did for those he enjoyed with his victims. Mr. You's repeated breaches of trust and confidence are persuasive evidence that any promise of compliance with the conditions of bond – including the promise to abide by the

condition of home incarceration with electronic monitoring -- cannot be uncritically accepted. *Compare Lakeview Technology v. Robinson*, 446 F.3d 655 (7th Cir. 2006)(Easterbrook, J.)(a pledge not to do something in the future is not entitled to much weight where there has been a "history of deceit").

That willingness to harm those apparently closest to him makes this case different from those in which security is posted by a family member to secure bond for a defendant. In those cases, in the absence of contrary evidence, it may reasonably be assumed that a defendant will not flee because of the consequences to those with whom he has intimate ties. Here, however, the evidence demonstrates that Mr. You has no such compunctions. But even if he had, the *de minimus* nature of the forfeiture of the equity in Mrs. You's home, when balanced against the dire consequences that would follow in the wake of a conviction, would not appear to be a sufficient motivator for Mr. You not to flee.

Mr. You has demonstrated that he has not only the will to flee when the need arises, but the skill to do so. The government has represented that there is approximately $200,000 in unaccounted-for funds that Mr. You obtained from his victims. Hence, it would appear that Mr. You has access to resources to finance flight and avoid detection. Home incarceration with electronic monitoring would not be a sufficient condition given the circumstances of this case. That safeguard is not a tether; it is only as effective as a defendant chooses to make it. That condition, like all the other conditions of bond, depend upon the trustworthiness of the defendant. The bond forms that must be signed by a defendant in this district provide that the defendant "promise[s] to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed." Under the circumstances of this case, it cannot reasonably be concluded that Mr. You would honor the

promises on which bond depends.

The Bail Reform Act does not require the government to show with certainty that a particular defendant poses a risk of flight. It recognizes that bond decisions are exercises in uncertain prophesy. The fact-intensive assessment of all relevant factors and the various safeguards under the Act are specifically designed to further the accuracy of that necessarily prophetic judgment. *Salerno*, 481 U.S. at 751.[2] All that is required to deny bond based on risk of flight is for the government to prove by a preponderance of the evidence that no condition or set of conditions will reasonably assure the defendant's appearance at trial. The government has met that burden here.

IT IS HEREBY ORDERED that: 1) Pursuant to 18 U.S.C. § 3142(f), that Handel You is, until further order of court, committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; 2) Mr. You shall be afforded reasonable opportunity for private consultation with his counsel; and 3) Upon order of the United States District Court or on request of an attorney of the government, the Warden of the correctional facility in which defendant is confined shall deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

ENTER:

JEFFREY COLE
United States Magistrate Judge

Dated: July 14, 2008.

---

[2] So too did the Second Circuit, which had ruled in Salerno's favor.

7